*In re* MARRIAGE OF KAY BEA DUNLAP, Petitioner-Appellant, and JOHN W. DUNLAP, Respondent-Appellee.

Fourth District   No. 4—97—0295

Argued October 15, 1997.—Opinion filed January 22, 1998.—Rehearing denied March 13, 1998.

Peggy J. Ryan (argued), of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

Gregory A. Scott (argued), of Scott & Scott, P.C., of Springfield, for appellee.

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

Petitioner Kay Bea Dunlap filed for divorce on grounds of adultery. Respondent John W. Dunlap's counterpetition alleged mental cruelty. The parties agreed to, and the trial court accepted, stipulated values and division of certain properties and the nonmarital nature of other properties. Kay's petition was granted and, in the absence of a complete agreement between the parties, the trial court entered judgment dividing their property and awarding Kay maintenance. Kay appeals both the property division and the maintenance award.

## I. BACKGROUND

Kay and John were married in April 1971 in Peoria, Illinois. Kay was a widow with four children; John was a widower whose first wife and four daughters had been killed in an automobile accident. He had one surviving child. Kay and John each adopted the other's children; they had no children together.

Kay and John separated in May 1994. Kay filed a petition for dissolution of marriage in the circuit court of Sangamon County in November 1995 and, in December 1995, John responded, denying the allegations in Kay's petition and filing his own petition for dissolution. At a hearing on grounds in October 1996, the court found in

favor of Kay, and a stipulation of the parties was filed containing, among other terms: an agreed value of $3,025 per acre for a 40-acre tract of marital farmland; an agreement that John would purchase Kay's share in the 40-acre tract for $60,500; and an agreement that another 27-acre tract was John's nonmarital property.

The trial court issued its opinion in February 1997 and entered judgment in April 1997. At the time of the entry of the judgment of dissolution of marriage, Kay was 53 years of age and John was 62. They had been married 26 years. This appeal followed.

The family lived for 22½ years in a rural home that John inherited from his father several years after the marriage. The parties agree that the home is John's nonmarital property. Marital funds were used to pay the real estate taxes on the property and remodel and maintain it during the marriage.

John is employed at Bunn Capitol Company as sales manager and, at the time of the divorce, was earning approximately $120,000 per year. In addition, the parties farmed approximately 70 acres for more than 20 years and operated a hog business for 12 years, until 1984.

Throughout the marriage, Kay was a homemaker and primary caretaker of the five children. She did not work outside the home except for a brief period. She worked alongside John in the farming and hog operations. Kay also assisted John in his job by taking phone calls, running errands, filing, and hand-crafting gifts for his clients. In addition, she frequently acted as hostess when the couple entertained clients at their vacation home in Missouri.

For two years following the parties' separation, Kay did not seek work but spent a substantial period of time caring for a daughter who was ill and seeking counseling for herself and John for emotional problems relating to the breakup of the marriage. She also returned to the marital home for several weeks to assist John while he was recovering from knee replacement surgery. Late in 1995, Kay began to look for employment and continued her job search until April 1996. She had five interviews for jobs paying $5 to $6 per hour, but did not receive any offers. She accepted a series of temporary, part-time positions paying $6 per hour. At the time of the hearing, she was working three hours per day for a bank, earning $8 per hour.

In April 1996, Kay began attending Robert Morris College, pursuing an associate degree in accounting. At the time of the hearing, she was taking classes two nights a week, working three hours a day, and had stopped applying for jobs.

The portions of the trial court judgment relevant to this appeal are (1) the award of $1,500 per month as maintenance to Kay, until

such time as John retires from his current employment; (2) approval of the parties' stipulation with regard to undisputed division of martial property; (3) calculation of the value of the marital estate at approximately $955,000 and the award of 55% to John and 45% to Kay; (4) the decision of the court not to reimburse the marital estate for alleged improvements to the residence or the value of labor expended by the parties; (5) reimbursement of $9,000 to the marital estate for structures built on John's nonmarital property; (6) allocation of the entire 1995 bean crop as John's nonmarital property; and (7) allocation of more than one-half of the 1996 crop to John as his nonmarital property. The judgment made no mention of marital debts.

## II. ANALYSIS

### A. Award of Maintenance

The trial court awarded Kay $1,500 per month in maintenance until John's retirement, at which time she will receive one-half the retirement benefit accrued during the marriage. The trial court stated:

> "In making this maintenance award, the Court has considered all statutory factors ***. *** Wife has substantial marital and nonmarital property available to her and in addition thereto has the ability to contribute to her own support by working."

■ The propriety, amount, and duration of a maintenance award lie within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 652, 616 N.E.2d 1379, 1390 (1993). Section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504 (West 1996)) requires the trial court to consider all relevant factors, but does not require that they be "given equal weight, so long as the balance struck by the court is reasonable under the circumstances." *In re Marriage of Miller*, 231 Ill. App. 3d 480, 485, 595 N.E.2d 1349, 1353 (1992).

John currently earns about $120,000 per year and has farm income of about $10,000 per year. Kay works part-time and earns $6,240 per year. Under the 55% to 45% property division, John received $525,093.18 in marital property and Kay received $429,621.69. John's nonmarital assets are valued at $217,534 and Kay's at $121,345.32. In terms of total assets, Kay's combined marital and nonmarital property ($550,966) is 74% of John's ($742,627). The parties' stipulation included an opinion from a certified financial planner that they could expect to receive a minimum rate of return of 6.8% on their investments.

Kay claims monthly expenses of $3,290, including taxes. She also has taken out a student loan for $6,250 and estimates that she will incur $7,000 in additional student loan debt. John's monthly expenses are $3,697. He owns his own home and, thus, has no rent or mortgage payment. Substantial portions of the amounts he listed for telephone expense and gas, oil, and vehicle repair are reimbursed to him by his employer.

Kay argues that, taking into account the parties' income and nonmarital property and the 55% to 45% division of the marital property, she will not be able to maintain her predivorce standard of living. John argues that Kay has not demonstrated that her standard of living has deteriorated as a result of the divorce. However, before their separation, John and Kay lived in a rural older home, without rent or mortgage expense. They owned a vacation home in the Ozarks worth over $250,000. They had never financed a car because they had always been able to pay cash. In the several years immediately preceding their separation, they dined out most of the time. Kay's lifestyle during the marriage allowed her to operate a craft business out of their home, making ceramic dolls, and it was apparently not a concern that the craft business was a losing proposition. Although no part of the testimony in this case can be clearly identified as the "standard-of-living evidence," the undisputed facts require a conclusion that Kay's standard of living has, on the whole, been diminished by the divorce and that John's lifestyle has not suffered comparably.

In *Werries*, this court held:

"Only if it finds that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and is either unable to support herself through appropriate employment or is otherwise without sufficient income may the trial court issue a maintenance order." *Werries*, 247 Ill. App. 3d at 651, 616 N.E.2d at 1390.

The trial court here clearly found that Kay's income from part-time wages and investments was not sufficient for her reasonable needs and awarded $1,500 per month in maintenance.

The opinion in *Werries* discusses the distinction between the reasonable needs standard and the higher standard of lifestyle needs and noted that "the resources of the parties dictate whether they can maintain their life-style after dissolution." *Werries*, 247 Ill. App. 3d at 652, 616 N.E.2d at 1390. In *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 605 N.E.2d 670 (1992), this court combined the concepts, stating that the "benchmark for determination of maintenance is the *reasonable needs* of the spouse seeking maintenance *in view of the standard of living* established during the marriage." (Emphasis added.) *Tietz*, 238 Ill. App. 3d at 972, 605 N.E.2d at 676.

In *In re Marriage of Sisul*, 234 Ill. App. 3d 1038, 1039-40, 600 N.E.2d 86, 88 (1992), the court elaborated:

"One objective of the Act is to encourage a formerly dependent spouse to become financially independent in the future, if possible. [Citation.] However, the trial court should bear in mind that financial independence does not mean the ability to merely meet one's minimum requirements, but entails the ability to earn an income which will provide *a standard of living similar to that enjoyed during the marriage*." (Emphasis added.)

■ The standard of living during the marriage is thus a factor that must be considered by a trial court in determining the amount of maintenance to be awarded. If Kay is correct that her income, including the $1,500 monthly maintenance payment, is insufficient to meet her lifestyle needs, and if John has the means to provide for her continuing her prior lifestyle without compromising his own needs, then she is entitled to maintenance in that amount unless other factors make such an award unreasonable.

The parties' marital lifestyle was supported by almost $100,000 per year in after-tax income. Using one-half of their 1995 net income as a ballpark estimate of predivorce lifestyle, each spouse requires $48,669, or $4,056 per month, to maintain a similar standard of living. John's monthly income, after paying taxes and $1,500 maintenance, is $5,644. This amount does not include his additional income from farming or investments. His monthly expenses are $3,697, leaving him with over $2,000 per month after expenses. Kay's monthly after-tax income consists of $442 in wages, $1,488 from investments, and $1,250 in maintenance. Her monthly expenses, not including taxes, are $3,006. These three sources yield $3,205 per month, leaving her with a substantial lifestyle deficit.

We find that Kay's income from wages, investments, and $1,500 maintenance is insufficient under a "standard of living of the parties" analysis and that John's monthly excess of income over expenses would allow him to contribute to Kay's standard of living without impairing his own. Because the trial court made no specific mention of standard of living, it is not clear whether it determined incorrectly that there had been no adverse effect on Kay or that this was outweighed by other factors. We therefore remand to the trial court to give proper consideration to the standard of living during the marriage and to order maintenance accordingly.

### B. Application of the Stipulation By the Trial Court

The parties' stipulation, filed with the trial court on the date of the first hearing, stated:

"(1) That during the marriage, the parties purchased a 40-acre

tract of farmland in Sangamon County, Illinois, which has been appraised *** for Respondent [husband], at a value of $2,850.75 per acre, for a total value of $114,030.00, and *** for Petitioner [wife], at a value of $3,200.00 per acre, for a total value of $128,544.00 ***. The parties stipulate that the value of the 40-acre tract of farmland is $3,025.00 per acre, or $121,000.00, and that Respondent will purchase Petitioner's interest in the 40 acres for $60,500.00."

The written opinion of the trial court says:

"Pursuant to the stipulation of the parties, the husband is awarded his 27 acres and the wife is awarded her inheritance. The Court also approves the non-disputed division of the marital property of the parties."

In addition, the judgment of dissolution of marriage states that "the Stipulation of the parties with regard to the non-disputed division of marital property of the parties is approved."

Kay asserts that, despite the written stipulation and the trial court's approval of that stipulation, the property division ordered did not carry out the parties' agreement. That is, John was awarded the 40-acre property, subject to the overall 55% to 45% division, but was not required to pay Kay the agreed price. As a result, the benefit Kay received from this particular piece of property was $54,450 (45% of $121,000), not the $60,500 to which she agreed, resulting in a loss to her of $6,050.

John argues that the trial court did not ignore the parties' stipulation but, rather, incorporated it into its findings. The court's determination, according to John, was made on the totality of the marital estate and is thus proper. John cites no authority for such an approach. John's argument is essentially that the stipulation required a certain value to be placed on the farmland and that the property be awarded to him, but it did not require his payment to Kay of the amount specified because she would receive her share as a part of the overall disposition of property. The flaw in this argument is that the stipulation required an equal division of the value of the specific piece of property and the final division of the marital estate was based on a 55% to 45% split.

■ Kay relies upon both statutory authority and case precedent. Section 502 of the Act states:

"(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral agreement containing provisions for disposition of any property owned by either of them ***.

(b) The terms of the agreement, except those providing for the

support, custody and visitation of children, are *binding upon the court* unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties \*\*\* that the agreement is unconscionable." (Emphasis added.) 750 ILCS 5/502 (West 1996).

■ Arguing that the trial court was bound by the plain language of the statute to implement the terms of the stipulation, Kay cites *In re Marriage of DeRossett*, 173 Ill. 2d 416, 671 N.E.2d 654 (1996):

" ' "Where the language of an act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. [Citations.] It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent." ' " *DeRossett*, 173 Ill. 2d at 420-21, 671 N.E.2d at 656, quoting *In re Marriage of Lukas*, 83 Ill. App. 3d 606, 613, 404 N.E.2d 545, 550 (1980), quoting *Beckmire v. Ristokrat Clay Products Co.*, 36 Ill. App. 3d 411, 415, 343 N.E.2d 530, 534 (1976).

This court has previously addressed the effect of a stipulation and found that, absent grounds for setting aside a stipulation, it must be enforced. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 390, 642 N.E.2d 486, 490 (1994); see also *In re Marriage of Steel*, 195 Ill. App. 3d 348, 352, 552 N.E.2d 381, 384 (1990) (allowing modification of property division by stipulation, citing case law and statute favoring settlement by stipulation when not arising from fraud). There was no finding of fraud or unconscionability by the trial court in this case. Rather, the trial court expressed approval of the stipulation and used the agreed value of $121,000 for the property in its calculation of the marital estate.

The stipulation itself makes it clear that it was the result of a compromise. The parties had obtained independent appraisals of the property that were $350 per acre apart. They agreed to "split the difference" of the two appraisals and equally divide the resulting value of the total property. As a result, Kay argues, she gave up her opportunity to present the testimony of her expert and argue to the trial court that it should accept the higher value. In effect, her argument is one of detrimental reliance—that John received all of the benefit of the compromise and now more, while she received none of the benefit. In addition to failing to enforce the terms of the parties' agreement, the actions of the trial court make it appear that the division of the remaining marital property is more nearly equal.

■ We hold that when, as here, the parties in a dissolution action enter into a stipulation as to the value and division of some portion of the marital estate, the terms of that agreement are binding upon the

court. The trial court, unless it finds the agreement unconscionable as provided in section 502 of the Act, must give full effect to the terms stipulated by the parties before dividing the remainder of the marital estate. On remand, the trial court is instructed to divide the $121,000 stipulated value of this property equally between John and Kay and then to divide the remaining marital property in keeping with the remainder of this opinion.

## C. Challenge to Division of Marital Property

■ Kay next presents multiple issues related to the property division. John argues that the property division is one single issue and should not be considered piecemeal. It has been said:

> "The fairness of the distribution of marital assets cannot be dealt with on a piecemeal basis, *** but the distribution as a whole must be considered to determine if [it] was made in just proportions as required by the statute." *In re Marriage of Steele*, 212 Ill. App. 3d 425, 432, 571 N.E.2d 236, 240 (1991).

The issues raised by Kay, however, are not fundamentally about "fairness." Rather, they are about the proper application by the trial court of the statutory scheme for the division of property.

■ The standard on review is abuse of discretion. *DeRossett*, 173 Ill. 2d at 422, 671 N.E.2d at 657. With regard to the classification of property as marital or nonmarital, the decision of the trial court will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *In re Marriage of Simmons*, 221 Ill. App. 3d 89, 92, 581 N.E.2d 716, 719 (1991).

### 1. *Overall Division of Marital Property*

The trial court awarded John 55% of the marital property of the parties, stating:

> "In making this award, the Court has considered all the statutory factors and has placed great weight on the fact that husband has always contributed the use and profits from his non-marital property to the marriage. Additionally, this Court cannot overlook the fact that it was husband's inheritance from his first wife's estate that constituted the majority of the purchase price of the 40 acres of marital property."

■ A trial court may properly award one spouse a greater share of the marital estate if it determines that the relative contribution of that spouse *and* other relevant factors warrant such a result. *In re Marriage of Lloyd*, 81 Ill. App. 3d 311, 312, 401 N.E.2d 328, 329 (1980). On the other hand, even if one spouse has made a greater contribution to the acquisition of marital assets, the other spouse may be awarded more than half of the marital estate if other factors

weigh in her favor. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 639, 615 N.E.2d 1314, 1322-23 (1993).

■ Section 503(d) of the Act requires the trial court to divide marital property in "just proportions," taking into account enumerated factors and any additional factors the court deems relevant in each case. 750 ILCS 5/503(d) (West 1996); *In re Marriage of Aschwanden*, 82 Ill. 2d 31, 37, 411 N.E.2d 238, 241 (1980). The touchstone of proper and just apportionment is whether it is equitable in nature (*In re Marriage of Wade*, 158 Ill. App. 3d 255, 268, 511 N.E.2d 156, 165 (1987)), and each case must rest upon its own facts (*In re Marriage of Bentivenga*, 109 Ill. App. 3d 967, 972, 441 N.E.2d 336 (1982)). The requirement that the division of property be just and equitable does not mean that it must be mathematically equal. *Wade*, 158 Ill. App. 3d at 268, 511 N.E.2d at 165.

Kay argues that the 55% to 45% division of the marital estate is an abuse of discretion because it demonstrates a disregard for her contributions as a homemaker. She asserts that, although John made a greater financial contribution, she contributed to the marital estate through her efforts as a wife and mother and by entertaining clients and otherwise supporting his career. She also testified, and John supported her testimony, that she labored alongside him, farming the 40-acre property and an additional 27-acre parcel of John's nonmarital property, and operating the hog farm. Essentially, Kay's argument is that, to the extent that the couple accumulated marital assets, it was through the equal effort of both parties and it was, therefore, an abuse of discretion for the trial court to fail to credit her contribution.

Kay relies heavily on the decision of the Supreme Court of Illinois in *Aschwanden*, which held that an 80% to 20% division of property in favor of the ex-husband was an abuse of discretion where the ex-wife was a traditional homemaker in a long-term marriage. The division in this case, however, is not nearly so dramatic.

The status of the ex-wife as a traditional homemaker was at issue in *In re Marriage of Heller*, 153 Ill. App. 3d 224, 233, 505 N.E.2d 1294, 1299 (1987), where the court found no abuse of discretion in an equal division of marital property. The ex-wife had been a homemaker for over 20 years and had insufficient income to support herself based upon needs established by the parties' standard of living prior to the divorce. Similarly, there was no abuse of discretion in the award of half of the marital assets to the wife in *Steele*, 212 Ill. App. 3d at 433, 571 N.E.2d at 241, where she was 59 years of age, had been a homemaker for 10 years, was in poor health, was unemployed, and had only an eighth-grade education. In *In re Marriage of Davis*, 215

Ill. App. 3d 763, 775, 576 N.E.2d 44, 52 (1991), it was not an abuse of discretion to divide the marital assets approximately equally in a marriage of long duration, where the ex-wife had made a substantial contribution as homemaker, had entertained the ex-husband's clients, and had a lower earning capacity and health problems.

■ Kay has not met the burden of demonstrating that her award is so small, as in *Aschwanden*, that it is grossly disproportionate to her contributions. Showing that awards of 50% to some traditional homemakers are *not* an abuse of discretion does not establish that an award of less than 50% in this case *is* an abuse of discretion.

However, the trial court based its decision to award John a greater share, at least in part, on John's contribution of the use and profits of his nonmarital property. In such a situation, the trial court should first determine whether the income from the nonmarital property was marital income or whether it was a gift to the marital estate, in which case the nonmarital estate is not entitled to reimbursement. 750 ILCS 5/503(a)(7), (c)(2) (West 1996).

Section 503(a)(8) of the Act provides that income from the nonmarital property of one spouse is marital income if the income is attributable to the personal effort of a spouse. 750 ILCS 5/503(a)(8) (West 1996). Both John and Kay testified that they worked side-by-side, as partners, in their farming operations. Because their personal efforts produced the farm income, it was marital property. Even if the income from John's nonmarital property was not marital income, his contribution of those funds to the household is presumed, absent rebuttal by clear and convincing evidence, to be a gift to the marital estate. *In re Marriage of Sokolowski*, 232 Ill. App. 3d 535, 544, 597 N.E.2d 675, 681 (1992).

The trial court appears to have assumed that the income from John's nonmarital property was nonmarital or else that he is entitled to some reimbursement from the marital estate. The trial court did not, however, find that John had met the burden of proving his right to reimbursement by clear and convincing evidence.

The second basis mentioned by the trial court for awarding John 55% of the marital property is his greater contribution to the purchase of the same 40-acre parcel that is the subject of the stipulation discussed above. Because we decided above that the stipulation must be enforced, it is inappropriate for the trial court to then take into consideration the source of funds for the purchase of that property when dividing the remaining property. To award John a greater share of the remaining marital property based upon his greater contribution to the purchase of the 40-acre parcel would have the effect of voiding the stipulation. In effect, Kay's agreed share of that prop-

erty would be given to her with one hand and taken away with the other.

· Thus, we hold that the reasons stated by the trial court for its 55% to 45% division of the marital estate are improper. We remand for reconsideration of the property division, with particular regard for whether John is, in fact, entitled to any reimbursement of his nonmarital estate for contributions made to the marital estate.

The material in sections 2, 3 and 4 is not to be published pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23 (eff. July 1, 1994)).

## III. CONCLUSION

We remand to the trial court with directions to reconsider the maintenance award under a standard-of-living analysis; to apply the terms of the parties' stipulation before proceeding to divide the remaining marital property; to recalculate the amount to be reimbursed to the marital estate for improvements made to nonmarital property; and to divide the remaining marital estate in just proportions. We affirm the trial court's rulings with respect to reimbursement of the marital estate for Kay's labor in the nonmarital home and with respect to the classification of certain farming income as nonmarital. We find no error in the trial court's disposition of the debts of the parties.

Affirmed in part and remanded in part, with directions.

GREEN and STEIGMANN, JJ., concur.