# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Bradley*, 2011 IL App (4th) 110392

---

| | |
|---|---|
| Appellate Court Caption | *In re*: the Marriage of VICKI BRADLEY, Petitioner-Appellee, v. BOBBY RAY BRADLEY, Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0392 |
| Argued | November 17, 2011 |
| Filed | December 6, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In marriage dissolution proceedings, the trial court did not err in barring respondent from claiming that a Missouri farm respondent obtained from his mother was his nonmarital property, the trial court did not err as to the amount of attorney fees awarded to petitioner, the maintenance awarded to petitioner was not an abuse of discretion, there was no error in determining respondent's net income and setting his child support obligation, and a payable on death account was properly classified as marital property. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 09-D-102; the Hon. Mark A. Drummond, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Gerald L. Timmerwilke (argued), of Blickhan Timmerwilke, Woodworth & Larson, of Quincy, for appellant.

Andrew C. Schnack III (argued), of Schnack Law Offices, of Quincy, for appellee.

Panel

JUSTICE McCULLOUGH delivered the judgment of the court, with opinion.

Justices Steigmann and Pope concurred in the judgment and opinion.

## OPINION

¶ 1      On April 3, 2009, petitioner, Vicki Bradley, petitioned for dissolution of her marriage to respondent, Bobby Ray Bradley. On April 12, 2011, the trial court entered a judgment dissolving the marriage, addressing issues of property distribution and maintenance.

¶ 2      Bobby appeals, arguing (1) the trial court erred by barring his claim that a farm was nonmarital property, (2) the trial court erred in the amount it awarded Vicki for her attorney fees, (3) the trial court's maintenance award of $250 per week was an abuse of discretion, (4) the trial court erred in determining Bobby's net income and setting his child support obligation, and (5) the trial court erred in finding a payable on death account was marital property. We affirm.

¶ 3      Bobby and Vicki were married on November 28, 1992. Two children were born during the marriage, Denver (September 17, 1993) and Sierra (November 15, 1995). On April 3, 2009, Vicki filed a petition for dissolution of marriage.

¶ 4      On July 30, 2009, the trial court ordered pretrial affidavits to be filed on or before November 12, 2009, and set a trial date of November 20, 2009. The affidavits were to identify all contested issues and address marital and nonmarital property and its value.

¶ 5      On August 5, 2009, Vicki filed a motion to compel, stating Bobby "failed to respond to the Interrogatories with regard to real estate" and seeking attorney fees and costs against Bobby. On August 13, 2009, the trial court ordered discovery to be completed within seven days, and also on August 13, 2009, Bobby filed a certificate stating he forwarded to Vicki's counsel the answer to interrogatories and compliance with request for production on that same day.

¶ 6      On August 20, 2009, the trial court entered an order stating "*[n]either party* shall sell, convey, dispose of, hide, mortgage, give away, hide, transfer or allow assets to be transferred to any third party pending this proceeding." (Emphasis in original.)

¶ 7      Vicki filed her pretrial memorandum on November 17, 2009. She had recently secured

part-time employment earning minimum wage. Bobby worked as a lineman with gross earnings of $55,995.91, as of July 4, 2009. According to Vicki, the parties owned a home in Quincy, Illinois, and a farm in Missouri. Bobby also filed a pretrial affidavit on November 17, 2009. He worked as a lineman. "He also rents farmland and farms on a part time basis." Bobby identified the home in Quincy, Illinois, as marital property but did not reference a farm in Missouri.

¶ 8 At the hearing on November 20, 2009, Vicki advised the trial court that Bobby failed to identify in his answer to interrogatories and pretrial affidavit substantial acreage he owned in Missouri. Vicki was told by another individual, approximately two weeks earlier, that Bobby owned the Missouri farm. Bobby advised the court that the property belonged to his mother and he did not know the property had been deeded to him. Bobby stated he did not pay his mother for the property. The court continued the matter for additional discovery, stating:

"I'll reserve the issue of sanctions and fees. I'll reserve the issue of false pleadings on the pretrial affidavit. Mr. Timmerwilke says he had no idea concerning this, and I have to, at this point, take him at his word, but the bottom line is his client signed this attesting to the facts, and he will have to show that he had absolutely no idea that his mother, back in 2005, had deeded a farm to him."

¶ 9 On January 20, 2010, Bobby filed a supplement to his pretrial affidavit stating he claimed the 118-acre farm as his nonmarital property, "being a gift from his mother." Further, Bobby stated the property had been appraised at $133,600.

¶ 10 On April 30, 2010, Bobby filed an amended supplement to his pretrial affidavit claiming a "final structured settlement payment of $90,000 as non-marital from an accident which he had in 1983 which was settled in 1985." Bobby stated that a portion of the settlement proceeds was given to his mother "as partial consideration for the farm." According to Bobby, "[t]he farm was provided at a great discount."

¶ 11 On May 10, 2010, Bobby filed a second amended supplement to his pretrial affidavit attaching "the settlement annuity from his 1983 accident as his claimed non-marital property." On May 21, 2010, Bobby filed his third amended supplement to his pretrial affidavit attaching a warranty deed and photographs of a property he alleged Vicki gave a family member in 2003, for "no consideration."

¶ 12 The trial court heard evidence on May 5, 2010, May 24, 2010, and June 14, 2010. Bobby, age 51 at the time of the May 2010 hearings, worked as a lineman. An April 30, 2010, pay stub showed Bobby earned approximately $29,427, through April 24, 2010. "He also rents farmland and farms on a part time basis." Vicki, age 46, completed two years of college approximately 20 years ago, and presently works as a receptionist with gross earnings of approximately $320 per week.

¶ 13 On November 18, 2010, the trial court entered an order stating, in part:

"The bottom line is that the Respondent lied in this case and lied more than once. Boiled down to its simplicity, the Respondent's argument to this court is, 'O.K., she caught me, make me pay some of her fees.' If courts adopt this rather simplistic approach to lying, then lying to gain an advantage just becomes an economic equation. If the stakes far

exceed the potential fees, then telling the truth simply becomes a cost/benefit analysis."

¶ 14    Based upon the "facts and the applicable law," the trial court adopted Vicki's "written proposal for distribution" finding her requests "fair and equitable" and "not overreaching." The court ordered Bobby to pay $6,023 of Vicki's attorney fees, biweekly child support in the amount of $750, and maintenance in the amount of $250 per week.

¶ 15    On January 6, 2011, Bobby filed a motion for clarification of the trial court's order entered on November 18, 2010. On March 25, 2011, the trial court entered an order awarding Bobby "the 118 acres in Missouri and, as a sanction under Supreme Court Rule 219(c), bars his claim that this land is non-marital and values that land at $227,000." The court set forth the following in support of the sanction:

"It is more accurate to state that the court, pursuant to Supreme Court Rule 219(c)(iii), is barring the Father [(Bobby)] from maintaining his claim that it is non-marital. It appears to this court that the $36,000 paid for the farmland was from a non-marital source, being a personal injury claim which accrued before the marriage, that the Father segregated the funds, that no marital funds were commingled in the Father's separate account and that the total price was paid from these funds. The Father finds himself in this position due to the following chronology:

| May 13, 2005 | Property purchased by check signed by Father in the amount of $36,000.00 payable to his mother and memo on check reads '120 AC. Homeplace' |
| 2005 forward | Real estate taxes on 118 acres paid by Father |
| 2006 forward | Expenses on 118 acres appear on Father's joint tax returns with Mother |
| April 3, 2009 | Petition for dissolution of marriage filed. |
| August 10, 2009 | Father answers Interrogatories, under oath, and does not reveal the 118 acres in response to Interrogatory #9 requesting a listing of all real estate in which he has an interest nor Interrogatory #8 where he is asked to list all property, real or personal, that he claims as non-marital. |
| November 17, 2009 | Files Pretrial Affidavit, under oath, and does not list the 118 acres under either marital or non-marital property. |
| November 20, 2009 | Sat next to attorney in court while attorney made |

the following statements to the court:

'... he did not see the deed from his mother.'

'He did not–he did not see the deed.'

'So, he had not had knowledge that this property had been deeded.'

'He did not know about it through the lawyers.'

'And, judge, for the record, I want to state, he has not paid any consideration for that. He has not given her any money, whatsoever, for that property, so it is going to be non-marital.'

| | |
|---|---|
| January 20, 2010 | Files, under oath, Supplement to Pretrial Affidavits stating: <br><br> 'Respondent hereby claims the real estate as shown on Exhibit A, as his non-marital property being a gift from his mother as Exhibit A-1.' |
| March 9, 2010 | Sends compliance with Second Supplemental Request for Production which states, 'All information concerning these properties has been disclosed in the Initial Discovery, Pre-Trial Affidavit and Supplement to Pre-Trial Affidavit.' |
| April 5, 2010 | Court enters order requiring any Amendments to Pretrial Affidavits to be filed by May 1, 2010. |
| April 30, 2010 | Father files Amended Supplement to Pretrial Affidavit claiming he paid partial consideration for the 118 acres but that the payment was from non-marital funds." |

The court found Bobby's conduct willful and the sanction "sufficient," stating "[t]he present case involves both problems of omission and commission and over an extended period of time."

¶ 16    On April 12, 2011, the trial court entered a judgment dissolving the marriage, addressing

issues of property distribution and maintenance.

¶ 17     This appeal followed.

¶ 18     Bobby first argues that the trial court's barring of his claim that the Missouri farm was nonmarital property was too harsh a sanction. Bobby admits he lied but contends he "never refused to follow a court order" and "he immediately complied." Bobby suggests "[t]he only relevant consideration is a potential sanction of reasonable attorney fees for the additional time expended by Vicki's attorney."

¶ 19     Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) authorizes a trial court to impose a sanction on a party who unreasonably fails to comply with the court's discovery rules or orders. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120, 692 N.E.2d 286, 289 (1998). An offending party may be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue. Ill. S. Ct. R. 219(c)(iii) (eff. July 1, 2002). "In lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty." Ill. S. Ct. R. 219(c) (eff. July 1, 2002).

¶ 20     The trial court has discretion to impose a particular sanction and its decision will not be reversed absent a clear abuse of discretion. *Shimanovsky*, 181 Ill. 2d at 120, 692 N.E.2d at 289. The sanction imposed by the trial court should ensure discovery and a trial on the merits. The purpose of the sanction is to coerce compliance with discovery orders, not to punish the remiss party. *Shimanovsky*, 181 Ill. 2d at 123, 692 N.E.2d at 291. Dismissal or entry of a default judgment is a severe sanction and should be invoked only in cases where the party's actions exhibit a deliberate, contumacious, or unwarranted disregard of the court's authority and after all the other court's enforcement powers have failed to advance the litigation. *Shimanovsky*, 181 Ill. 2d at 123, 692 N.E.2d at 291.

¶ 21     The factors used to determine if a trial court abused its discretion in determining the appropriate sanction include the following: (1) the surprise to the adverse party, (2) the prejudicial effect of the proffered evidence or testimony, (3) the nature of the evidence or testimony, (4) the diligence of the adverse party in seeking discovery, (5) the timeliness of the adverse party's objection to the evidence or testimony, and (6) the good faith of the party offering the evidence or testimony. No single factor is determinative. *Shimanovsky*, 181 Ill. 2d at 124, 692 N.E.2d at 291.

¶ 22     Applying these factors to the present case, the trial court acted within its discretion by barring Bobby's claim that the Missouri farm was nonmarital property. Vicki had no idea that Bobby was deeded the Missouri farm until approximately two weeks before trial. The fact that she was told Bobby owned the Missouri farm approximately two weeks before trial does not obliterate the surprise factor. Vicki did not have an adequate opportunity to investigate the circumstances by which the property was deeded to Bobby and to secure an appraisal. An enormous potential for prejudice lies if financial information is missing due to a party's failure to comply with discovery. See *In re Marriage of Barnett*, 344 Ill. App. 3d 1150, 1153,

802 N.E.2d 279, 281 (2003). The Missouri farm was the most significant asset before the court, valued at $227,000. Bobby initially refused to identify in his answer to interrogatories and pretrial affidavit the substantial acreage he owned in Missouri and then repeatedly lied to the court concerning his acquisition of the property.

¶ 23    Vicki filed and sent interrogatories and a request for production on approximately May 1, 2009, and filed a motion to compel answers to the interrogatories on August 5, 2009. She secured a court order demanding compliance with her discovery, but at the hearing on November 20, 2009, Vicki advised the trial court that Bobby failed to identify in his answer to interrogatories and pretrial affidavit the substantial acreage he owned in Missouri. A review of the record reveals Vicki timely objected to Bobby's failure to comply with discovery rules and court orders.

¶ 24    Bobby presented no evidence he made a good-faith effort to provide information concerning the substantial acreage he owned in Missouri. Bobby failed to comply with discovery requests and when confronted, repeatedly lied to the court concerning his acquisition of the property.

¶ 25    The trial court sanctioned a flagrant violation of the court's discovery rules and orders. Vicki faced the potential of being blindsided by undisclosed evidence. The less drastic alternative sanction suggested by Bobby, awarding Vicki reasonable attorney fees, does not cure the problems of an unbalanced consideration of the issues and an unfair exercise in brinkmanship. It is reasonable to characterize this as "a deliberate and contumacious disregard for the court's authority." *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 68, 651 N.E.2d 1071, 1081 (1995). The court acted within its discretion in barring Bobby's claim that the Missouri farm was nonmarital property.

¶ 26    Bobby next argues that the trial court erred in the amount it awarded Vicki for her attorney fees. An appellate court reviews the amount a trial court awards in attorney fees under an abuse-of-discretion standard. *In re Marriage of Powers*, 252 Ill. App. 3d 506, 508-09, 624 N.E.2d 390, 392-93 (1993). A trial court abuses its discretion when it acts arbitrarily, without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law, resulting in substantial injustice. *In re Marriage of Marsh*, 343 Ill. App. 3d 1235, 1240, 799 N.E.2d 1037, 1041 (2003). The trial court did not abuse its discretion in the amount of attorney fees it awarded.

¶ 27    In her petition for dissolution of marriage filed on April 3, 2009, Vicki sought an order that Bobby "pay the cost of Petitioner's attorney's fees and court costs incurred by her as a result of the foregoing cause of action." In her motion to compel filed on August 5, 2009, Vicki sought an award of attorney fees pursuant to Rule 219(c). In her pretrial memorandum filed on November 17, 2009, Vicki sought an order that Bobby pay her attorney fees in the amount of $5,292. The trial court heard evidence through June 14, 2010. In the trial court's order filed on November 18, 2010, the court adopted Vicki's "written proposal for distribution." Vicki identified attorney fees in the amount of $5,292 as of November 9, 2009, and $11,315.80 as of June 10, 2010, and noted an increase in attorney fees between November 2009 and June 2010 of $6,023.80. The trial court awarded Vicki $6,023 in attorney fees, the fees that had accrued between November 2009 and June 2010.

¶ 28 A trial court may award attorney fees as sanctions when a party's misconduct has caused another party to incur fees. *Smith v. Gleash*, 325 Ill. App. 3d 79, 85, 757 N.E.2d 101, 105 (2001). The only restriction imposed by Rule 219(c) is that the award of attorney fees must be related to and be the result of the specific misconduct. *Smith*, 325 Ill. App. 3d at 85, 757 N.E.2d at 105-06.

¶ 29 Bobby's misconduct in this case involved "both problems of omission and commission and over an extended period of time." At the hearing on November 20, 2009, Vicki advised the trial court that Bobby failed to identify in his answer to interrogatories and pretrial affidavit substantial acreage he owned in Missouri. The trial court heard evidence through June 14, 2010. On November 18, 2010, the trial court entered an order finding Bobby "lied in this case and lied more than once." The court barred Bobby from maintaining his claim that the Missouri farm was nonmarital property and awarded Vicki $6,023 in attorney fees, the fees that had accrued between November 2009 and June 2010. Considering Bobby's disregard for the trial court's authority, the trial court's award of attorney fees was not improper. See *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314, 614 N.E.2d 1194, 1198-99 (1993) (decision to impose a particular sanction under Rule 219(c) is within the discretion of the trial court and, thus, only a clear abuse of discretion justifies reversal).

¶ 30 Alternatively, the record in this case more clearly reflects that the trial court awarded attorney fees pursuant to the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act), and not Rule 219(c). Section 508(a) of the Dissolution Act provides:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. *** At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of [s]ection 503." 750 ILCS 5/508(a) (West 2008).

Section 503(j) states, in pertinent part, as follows:

"After proofs have closed in the final hearing on all other issues between the parties ***, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided, in accordance with the following provisions:

*** 

(2) Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this [s]ection 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under [s]ection 504." 750 ILCS 5/503(j) (West 2008).

¶ 31 Maintenance was awarded in this case. Thus, the trial court was directed by section 503(j)(2) to consider the criteria for an award of maintenance under section 504. In making its award, the court considered the relevant factors itemized in section 504(a). The court also considered the unnecessary increase in the cost of litigation by Bobby in making its award to Vicki. The language in section 504 allows a court to consider "any other factor that the court expressly finds to be just and equitable" when determining a fee award under section 508(a). 750 ILCS 5/504(a)(12) (West 2008). Unnecessarily increasing the cost of litigation

is a factor the court may consider in allocating attorney fees. See *In re Marriage of Haken*, 394 Ill. App. 3d 155, 161, 914 N.E.2d 739, 744 (2009).

¶ 32    The relative financial circumstances of the parties merited a contribution toward Vicki's fees under section 508(a). Additionally, Bobby unnecessarily increased the costs of the litigation. This was a relevant factor the trial court could consider in making an award since it may consider "any other factor that the court expressly finds to be just and equitable" when making an award of attorney fees. 750 ILCS 5/504(a)(12) (West 2008); *Haken*, 394 Ill. App. 3d at 162, 914 N.E.2d at 744. The trial court did not abuse its discretion in the amount of attorney fees it awarded.

¶ 33    Bobby next argues the trial court's maintenance award of $250 per week was an abuse of discretion. We disagree.

¶ 34    A trial court's determination as to the awarding of maintenance is presumed to be correct. *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1063, 838 N.E.2d 310, 314 (2005). The amount of a maintenance award lies within the sound discretion of the trial court, and this court must not reverse that decision unless it was an abuse of discretion. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 292, 932 N.E.2d 543, 548 (2010). An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. *Nord*, 402 Ill. App. 3d at 292, 932 N.E.2d at 548. The party seeking reversal of a maintenance award bears the burden of showing the trial court abused its discretion. *Nord*, 402 Ill. App. 3d at 292, 932 N.E.2d at 548.

¶ 35    Section 504(a) of the Dissolution Act sets forth the following 12 factors for a trial court to consider in deciding whether to grant a maintenance award:

"(1) the income and property of each party, including marital property apportioned and non[ ]marital property assigned to the party seeking maintenance;

(2) the needs of each party;

(3) the present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child making it appropriate that the custodian not seek employment;

(6) the standard of living established during the marriage;

(7) the duration of the marriage;

(8) the age and the physical and emotional condition of both parties;

(9) the tax consequences of the property division upon the respective economic circumstances of the parties;

(10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(11) any valid agreement of the parties; and

(12) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2008).

¶ 36 In considering these factors, the trial court is not required to give them equal weight "so long as the balance struck by the court is reasonable under the circumstances." *In re Marriage of Miller*, 231 Ill. App. 3d 480, 485, 595 N.E.2d 1349, 1353 (1992). "Although the trial court must consider all the relevant statutory factors, it need not make specific findings as to the reasons for its decisions." *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1004, 883 N.E.2d 535, 541 (2008). "The benchmark for determining the amount of maintenance is the recipient's reasonable needs in light of the standard of living established during the marriage." *In re Marriage of Culp*, 341 Ill. App. 3d 390, 398, 792 N.E.2d 452, 459 (2003).

¶ 37 Bobby argues Vicki was not entitled to an award of maintenance in light of the amount of property awarded to her. The trial court entered a judgment of dissolution of marriage, awarding each party his or her personal property and dividing equally the remaining marital property, with each receiving $159,451. The trial court awarded Vicki the marital residence ($64,413), the 2001 Suburban ($9,500), a retirement account ($1,306), a 401(k) account ($16,923), a Prudential Life account ($261), and a tax refund ($6,811) and ordered she pay credit card debt in the amount of $6,225.

¶ 38 The trial court awarded Bobby the Missouri farm ($227,000), two vehicles ($3,800), a Hartford Life account ($1,591), a boat ($500), and a payable on death (POD) account ($7,119) and ordered he pay credit card debt in the amount of $14,097. The trial court also ordered Bobby to make an equalizing payment to Vicki of $66,462.

¶ 39 Additionally, the trial court ordered Bobby to pay maintenance of $250 per week, stating: "With child support, the Mother will receive $19,500 per year, which is non-taxable. Her taxable income is $16,640 from her employment. The court finds that she is in need of maintenance in the sum of $250.00 per week which totals $13,000 per year. This results in gross income to her household in the amount of $49,140 for the support of herself and the two children. Maintenance is to be reviewed when the youngest child graduates from high school."

¶ 40 The parties were married for approximately 17 years before the initiation of these proceedings. The trial court awarded each party his or her personal property and divided equally the remaining marital property. Bobby has the greater present and future potential to earn income and acquire assets. Vicki, who was 46 years old at the time of the hearing, completed two years of college approximately 20 years ago, has little job experience, and presently works as a receptionist with gross earnings of approximately $320 per week. The trial court based its maintenance award on Bobby's income of approximately $29,427, through April 24, 2010. The court awarded Vicki $250 per week, or $13,000 per year in maintenance. Thus, Vicki's maintenance presently represents approximately 14% of Bobby's income and will be reviewed when Sierra (born November 15, 1995) graduates from high school. The court's order reflects its careful consideration of each applicable factor to be considered under sections 504(a)(1) through (a)(12) (750 ILCS 5/504(a) (West 2008)). The court did not abuse its discretion in awarding Vicki $250 per week in maintenance.

¶ 41    Bobby next contends the trial court erred in determining his net income and setting his child support obligation. We disagree.

¶ 42    Section 505 of the Dissolution Act requires the court to set the minimum amount of child support for two children at 28% of the noncustodial parent's net income, *unless the court finds reason to deviate from this figure.* 750 ILCS 5/505(a)(1), (a)(2) (West 2008). Section 505(a)(3) defines "net income" as the total of all income from all sources minus the following deductions: (1) federal income tax, (2) state income tax, (3) social security withholdings, (4) mandatory retirement contributions, (5) union dues, (6) dependent and individual health insurance premiums, (7) prior obligations of support or maintenance, and (8) expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income. 750 ILCS 5/505(a)(3) (West 2008). "Findings of a trial court as to net income and the awarding of child support are within the discretion of the trial court and will not be disturbed on review absent an abuse of that discretion." *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103, 655 N.E.2d 1144, 1148 (1995).

¶ 43    The trial court calculated a biweekly child support figure of $697.36, based solely on Bobby's earnings as a lineman. The court made clear the figure of $697.36 did not include farm income and ordered Bobby to pay $750 biweekly, an additional $52.64 biweekly, "due to the farm income." The court stated the following:

> "With regard to his farm income the Father, for the year 2008, listed farm income in the amount of $21,648 and expenses of $13,774 on Pet. Ex. #8. However, on his 2008 tax return he lists a loss on line 18 of $9,523. Again, his figures simply do not add up."

Bobby does not suggest a basis for the discrepancy in the numbers referenced by the trial court.

¶ 44    The Dissolution Act requires the trial court to consider "all income from all sources" in the computation of child support. 750 ILCS 5/505(a)(3) (West 2008). Bobby argues his tax returns show only losses from his farm work, and no income. "Income" for tax purposes is not synonymous with "income" for determining child support. See *In re Marriage of McGowan*, 265 Ill. App. 3d 976, 979, 638 N.E.2d 695, 697-698 (1994). The purpose of the two calculations are different. While the Internal Revenue Code is concerned with reaching an amount of taxable income, the support provisions in the Dissolution Act are concerned with reaching the amount of parental income in order to determine the sum each parent can pay for the support of their child. *McGowan*, 265 Ill. App. 3d at 979, 638 N.E.2d at 698. A trial court has broad discretion to determine whether a parent's claimed business losses are reasonable for purposes of calculating child support.

¶ 45    Bobby also argues his overtime "greatly inflates [his] income and should not have been used" in the computation of child support. While it may be true, as Bobby contends, that such income is uncertain to continue, the fact of its existence in the past is something which the trial court properly took into consideration. See *In re Marriage of Reyna*, 78 Ill. App. 3d 1010, 1014, 398 N.E.2d 641, 645 (1979). If those sources of income do not continue to be available in the future, then Bobby may seek a modification of his support obligation. The evidence supported the trial court's determination of Bobby's net income and its calculation of his child support obligation.

¶ 46 Bobby next argues that the trial court erred in finding the POD account was marital property. Contrary to his argument that he "only incurred losses from his farm," and no income for purposes of calculating child support, Bobby now argues "the source of the cash in the P.O.D. account was undisputed; it came from farm income."

¶ 47 "With regard to the classification of property as marital or nonmarital, the decision of the trial court will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 777, 690 N.E.2d 1023, 1029 (1998). Section 503(a)(8) of the Dissolution Act provides that income from the nonmarital property of one spouse is marital income if the income is attributable to the personal effort of a spouse. 750 ILCS 5/503(a)(8) (West 2008).

¶ 48 Bobby argues that because the Missouri farm "was both a gift to Bobby and was paid for by Bobby through non-marital property *** the funds in Bobby's P.O.D. are non-marital." We disagree. Because Bobby's personal efforts produced the farm income, and "the source of the cash in the P.O.D. account was undisputed; it came from farm income," the POD account was marital property. Even if the income from Bobby's nonmarital property was not marital income, his contribution of those funds to the household is presumed, absent rebuttal by clear and convincing evidence, to be a gift to the marital estate. See *Dunlap*, 294 Ill. App. 3d at 779, 690 N.E.2d at 1030. The trial court did not err in finding the POD account was marital property.

¶ 49 In closing, this court commends the trial court's thoughtful analysis and careful explanation of its findings, which we found most helpful.

¶ 50 For the reasons stated, we affirm the trial court's judgment.

¶ 51 Affirmed.