*In re* MARRIAGE OF RUDOLF HAKEN, Petitioner-Appellant, and LEILA HAKEN, Respondent-Appellee.

Fourth District   No. 4—08—0379

Opinion filed September 8, 2009.

Robert E. Jacobson, of Flynn, Palmer & Tague, of Champaign, for appellant.

Sarah B. Tinney, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In April 2008, the trial court awarded respondent, Leila Haken, a portion of her attorney fees incurred during the course of the parties'

dissolution proceedings. The court's award was based, in part, on a finding petitioner, Rudolf Haken, acted improperly by needlessly increasing the costs of litigation. Rudolf appeals, arguing the court erred when it considered factors he claims were inapplicable to the court's determination. We affirm.

## I. BACKGROUND

The parties were married on November 11, 1989. They had three children: Oliver, born March 20, 1992; Sofia, born November 7, 1995; and Nicolas, born November 12, 1997. On January 7, 2004, Rudolf filed a petition for dissolution of marriage, seeking custody of the children. On April 5, 2004, Leila defaulted, and the trial court entered a judgment of dissolution. In that judgment, the court awarded Rudolf sole custody of the children and Leila reasonable visitation, reserving the issue of child support.

On May 21, 2004, Leila entered her appearance and filed a motion to vacate the default judgment. The trial court granted Leila's motion and vacated the judgment. On October 5, 2004, the court awarded Leila temporary custody with visitation to Rudolf.

On September 19, 2005, the trial court, pursuant to section 501(c—1)(1) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/501(c—1)(1) (West 2004) (a temporary award based on ability to pay and need)), ordered Rudolf to pay $7,500 as interim attorney fees to Leila. After unsuccessfully disputing the award, Rudolf paid the interim fees in full on December 5, 2005.

On November 16, 2006, the trial court entered a judgment of dissolution of marriage on grounds only, reserving ancillary issues for later determination. The judgment incorporated the parties' joint-parenting agreement in which they agreed to joint custody of the children with Leila designated as the primary custodial parent. The court scheduled the final hearing on all remaining issues for April 3, 2007. On that date, Leila filed a petition seeking Rudolf's final contribution to her attorney fees. The court heard evidence on April 3 and 12, 2007, and took the matter under advisement.

On July 2, 2007, the trial court entered a supplemental judgment of dissolution of marriage, resolving all remaining ancillary issues, except the issue of Rudolf's final contribution to Leila's attorney fees. In its supplemental judgment, the court ordered Rudolf to pay child support in the amount of $1,257 per month.

On April 1, 2008, the trial court conducted an evidentiary hearing on Leila's petition for fees. Leila's attorney, Sarah B. Tinney, testified her final bill for attorney fees was $76,485.11 (not including costs), all of which had been paid by Leila. An unbilled amount of $920.89 in

fees remained. Rudolf's counsel stipulated to the reasonableness of the fees. Tinney claimed Rudolf requested, over Leila's objection, that custody evaluations pursuant to section 604.5 of the Dissolution Act (750 ILCS 5/604.5 (West 2006)) be performed by Dr. Lyle Rossiter, a forensic psychiatrist, and Dr. Ruth Kuncel, a licensed clinical psychologist, both of the Chicago area.

Tinney testified as to the amount of time required to review and respond to these doctors' involvement in the case. She said they each filed a report, consisting of approximately 50 pages. Over 300 e-mail communications were sent back and forth among the attorneys and the parties related to the activity of these doctors. Because both professionals recommended Rudolf be awarded sole custody of the children, Tinney said she was forced to expend an inordinate amount of time to adequately defend Leila's custodial position. Tinney testified she attributed $38,000 of her fees to the involvement of Drs. Rossiter and Kuncel.

Leila testified she borrowed money from her mother to pay Tinney's bill and will repay the loan beginning in January 2009 at the rate of $350 per month. She testified she purchased a home in July 2007 with a monthly mortgage payment of $1,398. Her monthly income consisted of a gross salary of $3,600 ($43,200 annually) as a preschool music teacher and $1,257 child support.

Rudolf testified he earned a gross annual wage of $63,000 as a music professor at the University of Illinois and earned approximately $1,000 per year in "freelance" work in other musical endeavors. On cross-examination, Rudolf corrected his testimony and said he expected to earn approximately $2,000 in "freelance" work this year. He said that since September 2007, he had resided rent-free with his parents.

With regard to the involvement of Drs. Rossiter and Kuncel, Rudolf said he too had to expend large sums of money to pay their fees, as well as his own attorney fees, for the extraordinary amount of time spent on the case. He said Dr. Rossiter directed numerous and lengthy e-mail communications to him as well. He said all communications were circulated among the parties, counsel, and the doctors. He testified one of Dr. Rossiter's concerns was a perceived lack of disclosure and secrecy on Leila's part regarding counseling and evaluations of the children. According to Rudolf, due to that perceived secrecy, Dr. Rossiter expended additional hours trying to ascertain the true status of the children's counseling history.

Rudolf found Dr. Rossiter during an Internet search. He said he contacted several local mental-health professionals, but they each told him they would not perform the type of evaluation he desired. Initially, Dr. Rossiter estimated his fees would total $8,000, later increasing the

estimate to $20,000. However, Rudolf ended up paying Dr. Rossiter over $71,000. Rudolf said that, at some point during the process, Dr. Rossiter explained the issues were much deeper than Rudolf initially described. Rudolf testified the doctor told him: " '[Y]ou know, we're wasting tens of thousands of dollars because [respondent] simply won't answer questions or she, you know—' he expressed that somehow that, you know, it takes someone one minute to tell a lie and it takes him an hour to unravel the lie, so there's four hundred dollars for every lie. That's how he expressed it."

Rudolf's counsel told the trial court his fees totaled $70,385.36; Dr. Rossiter's fees totaled $71,730; and Dr. Kuncel's fees totaled $15,240, all of which had been paid by Rudolf. Rudolf told the court his parents gifted him the money to pay these fees. The court took the matter under advisement.

On April 21, 2008, the trial court issued a detailed memorandum opinion, ordering Rudolf to pay Leila $24,136.20 as final contribution toward her attorney fees within 120 days. The court's opinion set forth the following findings and analyses.

The trial court cited the factors set forth in section 503(d) of the Dissolution Act (750 ILCS 5/503(d) (West 2008)), and noted that the issue of Rudolf's contribution weighed in Leila's favor. Specifically, the court found (1) Leila was awarded "only a very small amount of marital property," (2) the parties were married for "a fairly lengthy period of time," (3) Leila is the primary custodial parent, (4) Rudolf was not ordered to pay maintenance, and (5) Rudolf "makes substantially more money" than Leila with a greater earning potential. The court noted that "both parties have the ability to pay their own attorney's fees" but consideration of the section 503(d) factors and "other equitable factors noted below" weighed in favor of contribution.

The trial court next analyzed Leila's claim Rudolf "needlessly increased the costs of this litigation by hiring Drs. Kuncel and Rossiter from the Chicago area and expending $86,970 on their 'expert' fees." The court relied on this court's decision in *In re Marriage of Mouschovias*, 359 Ill. App. 3d 348, 831 N.E.2d 1222 (2005), and considered it "directly on point." The court found as follows:

"After reviewing the entire record, the [c]ourt does find that [Rudolf] committed improper conduct in that he needlessly increased the costs of litigation by hiring Drs. Kuncel and Rossiter and paying them outrageous sums of money for their testimony and by then settling the case without using their testimony.

The [c]ourt wants to make it clear that it is certainly not critical of [Rudolf] for obtaining a controlled expert under section 604.5

[(750 ILCS 5/604.5 (West 2006))]. He had a perfect right to [seek to] retain a controlled expert, to present any expert evidence and any defense that he may choose, and to fight for custody of his children. However, the hiring of the experts in this case and the overall circumstances were highly unusual for a number of reasons. First, he paid $71,730.00 to Dr. Rossiter, a psychiatrist from the Chicago area, for his opinion and $15,240.00 to Dr. Kuncel, a psychologist recommended by Dr. Rossiter, to conduct psychological evaluations to serve as a partial basis for Dr. Rossiter's opinions. The sums paid are simply outrageous. Similar opinions and home and background investigations can be obtained from a number of qualified professionals in the Central Illinois area for between $4,500.00 and $8,500.00. *** Second, the [Leila's] attorney testified to over 300 e-mail communications from Dr. Rossiter to the attorneys and parties, some of which were marked as [r]espondent's [exhibit number] D. Such activity is highly unusual in conducting a home and background investigation. Third, a review of Dr. Rossiter's final report shows it to be most unusual in form and content from the reports that this [c]ourt normally reviews after a professional conducts a home and background investigation. *** Finally, Dr. Rossiter's opinion was that sole custody should be awarded to [Rudolf]. In spite of his favorable opinion, [Rudolf] chose to settle the case on the eve of the permanent custody trial by agreeing to joint custody, but with [Leila] designated as the primary custodial parent.

[Rudolf] either knew or should have known that expending such large sums of money to buy expert testimony was only going to add 'fuel to the fire' and would cause the other side to take whatever steps were necessary, even at great expense, to counter or discredit Dr. Rossiter's opinion. That is, indeed, exactly what happened.

The [c]ourt wishes to emphasize that it may have looked differently at this situation if the custody trial had actually been conducted and [Rudolf] had presented Dr. Rossiter at trial as his controlled expert, regardless of whether the [c]ourt agreed with his opinion or not."

The trial court ordered Rudolf to pay 40% of Leila's total attorney fees of $79,090.50, in the amount of $31,636.20, less the $7,500 previously contributed. The court entered a $24,136.20 judgment against Rudolf. This appeal followed.

## II. ANALYSIS

Rudolf argues the trial court erred in awarding contribution because, he claims, the factors relied upon by the court, set forth in sections 508(a) (which references factors set forth in section 503) and 508(b) of the Dissolution Act (750 ILCS 5/508(a), (b) (West 2006)), are

inapplicable. "[A] trial court's decision to award or deny fees will be reversed only if the trial court abused its discretion." *In re Marriage of Schneider*, 214 Ill. 2d 152, 174, 824 N.E.2d 177, 190 (2005). A trial court abuses its discretion when it acts arbitrarily, without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law, resulting in substantial injustice. *In re Marriage of Marsh*, 343 Ill. App. 3d 1235, 1240, 799 N.E.2d 1037, 1041 (2003). We find no abuse of discretion and affirm the court's judgment.

Section 508(b) provides:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party. If noncompliance is with respect to a discovery order, the noncompliance is presumptively without compelling cause or justification, and the presumption may only be rebutted by clear and convincing evidence. *If at any time a court finds that a hearing under this [s]ection was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly.* Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." (Emphasis added.) 750 ILCS 5/508(b) (West 2006).

Rudolf argues this subsection does not apply to this case because (1) this was not an action to enforce an order or judgment, and (2) no hearing was conducted *under this section* that was precipitated by some improper purpose. Rudolf claims the plain language of the above-quoted section requires, at least, one of these two occurrences. We conclude Rudolf's interpretation of the circumstances of when this section applies may be too limited. However, we need not determine whether section 508(b) is applicable because Leila argued for and the trial court awarded fees under section 508(a).

Section 508(a) states in pertinent part, as follows:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. *** At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of [s]ection 503." 750 ILCS 5/508(a) (West 2006).

Section 503(j) states, in pertinent part, as follows:

"After proofs have closed in the final hearing on all other issues between the parties \*\*\*, a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided, in accordance with the following provisions:
\*\*\*

(2) Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this [s]ection 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under [s]ection 504." 750 ILCS 5/503(j)(2) (West 2008).

Maintenance was not awarded in this case. Thus, the trial court was directed by section 503(j)(2) to consider the criteria for division of marital property under section 503. In making its award, the court considered the relevant factors itemized in section 503(d). The court also considered an unnecessary increase in the cost of litigation by Rudolf in making its award to Leila and discussed whether this is a proper factor to consider under section 508(a). At the hearing, Leila sought a final contribution under section 508(a) and never argued the language of section 508(b) relating to "improper purpose."

We believe the language in section 503 allows a court to consider an "unnecessary increase in the cost of litigation" when determining a fee award under section 508(a). Section 503(d) provides "[the court] also shall divide the marital property \*\*\* in just proportions *considering all relevant factors*." (Emphasis added.) 750 ILCS 5/503(d) (West 2008). Unnecessarily increasing the cost of litigation is a relevant factor in the division of property as well as in allocating attorney fees.

An award of attorney fees under section 508(a) is discretionary. Rudolf argues the award of fees under section 508(a) was improper because the petitioning party must prove an inability to pay fees and the ability of the other party to pay. Here, the court found each party had the ability to pay his or her own fees. Rudolf contends "inability to pay" is a *prerequisite* to a fee award under section 508(a). Such a reading of this section eviscerates the statutory directive in section 503(j)(2) to consider the criteria for the division of marital property under section 503(d) in making contribution awards. Under Rudolf's reading of section 508(a), once a court finds a party has the ability to pay his or her own fees, further inquiry ends and the court need not look at any other factor to determine whether contribution should be made. Rudolf is wrong.

The relevant section 503(d) factors considered by the court were as follows:
"(3) the value of the property assigned to [respondent];
(4) the duration of the marriage;

* * *

(9) the custodial provisions for [the] children;

(10) whether the apportionment is in lieu of or in addition to maintenance; [and]

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income." 750 ILCS 5/503(d)(3), (d)(4), (d)(9) through (d)(11) (West 2008).

The relative financial circumstances of the parties merited a contribution toward Leila's fees under section 508(a). Additionally, Rudolf unnecessarily increased the costs of the litigation. This was a relevant factor the court could consider in making an award since it is directed to consider *all* relevant factors when making an award of fees.

The trial court noted in its decision:

"[T]he entire 'inability to pay/ability to pay' mantra has been carried over from prior case law established before the substantial amendments to the attorney[-]fees provisions of the Dissolution Act over the years, including the 'Leveling the Playing Field' provisions in 1997. This has been further muddled by the extremely loose language in this regard in many [a]ppellate opinions."

Some courts have repeated language from older cases to the effect that a party seeking fees must establish his or her inability to pay and the other spouse's ability to do so. See, *e.g.*, *Schneider*, 214 Ill. 2d at 174, 824 N.E.2d at 190; *In re Marriage of Pond*, 379 Ill. App. 3d 982, 987, 885 N.E.2d 453, 458 (2008) (Second District); *In re Marriage of Berger*, 357 Ill. App. 3d 651, 662-63, 829 N.E.2d 879, 889 (2005) (First District); *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 622, 814 N.E.2d 152, 163 (2004) (Fourth District); *In re Marriage of Bowlby*, 338 Ill. App. 3d 720, 730, 789 N.E.2d 366, 375 (2003) (Fifth District). They fail to note the language added to section 508(a) in 1996 (effective as to cases pending after June 1, 1997), as follows: "At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of [s]ection 503." 750 ILCS 5/508(a) (West 1998).

The statute directs the court to consider many factors when deciding the amount of contribution a party may be ordered to make. The requirement that a person seeking contribution show an *inability* to pay appears nowhere in the statute. The relative financial standing of the parties should be considered, and that is what the section 503(d) factors are all about.

Rudolf hired two doctors from the Chicago area, who, as the trial court noted, charged "outrageous sums of money" for their services. As the court also noted, comparable area professionals typically charge a fraction of the fees incurred by Drs. Rossiter and Kuncel. Their

conduct of the home and background study, which precipitated over 300 e-mail communications, was categorized by the court as "highly unusual," "highly adversarial," and ultimately unnecessary in light of the fact Rudolf settled the case without using their testimony. The court concluded Rudolf's hiring of these experts needlessly increased the cost of litigation. As a result of Rudolf's conduct, Leila was forced to incur additional attorney fees to defend her position.

Under section 508(a), the award of attorney fees is discretionary and is made after the court considers the relative financial resources of the parties. 750 ILCS 5/508(a) (West 2006). The court found an award of attorney fees would be appropriate under section 508(a) because of the disparate financial resources of the parties.

We affirm the trial court's judgment pursuant to section 508(a). We find the court's decision that Rudolf "committed improper conduct in that he needlessly increased the costs of litigation by hiring Drs. Kuncel and Rossiter and paying them outrageous sums of money for their testimony and by then settling the case without using their testimony" was a proper factor for the court to consider, along with other factors, in using its discretion to fashion an award under section 508(a).

### III. CONCLUSION

We affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and POPE, J., concur.