NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240759-U

NO. 4-24-0759

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 7, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ABIGAIL PETERSON GREEN, | ) | Appeal from the |
|     Petitioner-Appellee, | ) | Circuit Court of |
|     v. | ) | Tazewell County |
| DAVID McDONALD, | ) | No. 20F144 |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nathan R. Bach, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in declining to award sanctions or
attorney fees to respondent.

¶ 2        In January 2021, petitioner, Abigail Peterson Green, filed a petition against

respondent, David McDonald, seeking visitation with her half-siblings (the minors). At the

hearing on the matter, the trial court granted respondent's motion for a directed finding, stating

respondent unreasonably denied visitation but finding petitioner failed to show the denial caused

undue harm to the minors.

¶ 3        Respondent filed a motion seeking attorney fees as sanctions under Illinois

Supreme Court Rule 137 (eff. Jan. 1, 2018) and under section 508 of the Illinois Marriage and

Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508 (West 2022)). The trial court

denied the motion, and respondent appeals. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5          In January 2021, petitioner filed a petition for sibling visitation, seeking visitation with the minors, twins who were born to petitioner's mother and respondent in 2013. Petitioner alleged her mother died on February 23, 2020, and before her death, petitioner had a close relationship with the minors. She alleged respondent had since unreasonably refused to allow her to visit the minors, and the last time she saw them was February 24, 2020. Petitioner further alleged the minors were subjected to undue mental, physical, and emotional harm by respondent's breaking of the sibling relationship.

¶ 6          The trial court ordered mediation and appointed a guardian *ad litem* (GAL) for the minors. Respondent objected to the appointment of the GAL and to a request by the GAL to interview the minors. His request to stay the GAL's investigation was denied.

¶ 7          The GAL filed a report stating petitioner was 23 years old and a teacher at an elementary school. Petitioner reported she did not have a good relationship with respondent, who petitioner said was angry and aggressive toward her when she lived with him while she was growing up. Petitioner reported her mother and respondent had a troubled relationship, which involved multiple orders of protection. Petitioner believed respondent did not like her because of an incident where he had hit petitioner's sister and petitioner called the police, causing the Illinois Department of Children and Family Services to become involved. Petitioner stated she had attempted to drop off Easter baskets and gifts for the minors, but they were thrown away.

¶ 8          The GAL reported respondent owned a business, teaching music lessons from his home. He said petitioner had previously interfered with his life and brought false allegations against him. Due to the history between himself and petitioner's family, respondent did not feel comfortable leaving the minors with petitioner. He stated he offered supervised visitation, but

petitioner had not responded.

¶ 9        The GAL reported the minors seemed happy and felt safe and loved with respondent. They told the GAL they missed their mother. The minors said they did not know petitioner well but were open to visiting her. They also said they would want respondent to be at any visits because he had told them petitioner was mean to him in the past.

¶ 10        The GAL opined petitioner had filed her petition in good faith and respondent believed he needed to limit his contact with petitioner to protect himself. The GAL suggested limited supervised visitation would be appropriate to help maintain the sibling bond between petitioner and the minors.

¶ 11        Prior to trial, the trial court ordered remote visitation for 30 minutes per week. The GAL reported the minors had engaged in FaceTime calls with petitioner and enjoyed them. The record indicates there was no answer to the calls on seven occasions. Respondent reported some concerns about the calls. The GAL reported toward the end of a phone interview with respondent about the calls and an upcoming court appearance, respondent became "angry, and almost threatening with his words." The GAL ended the conversation, and respondent told her that was "fine, because he has the whole thing on tape." The GAL did not know the conversation was recorded, nor did the GAL give permission for it to be recorded.

¶ 12        On December 13, 2022, the trial court held a hearing on the petition. The record contains only an excerpt of the report of proceedings of the hearing. The excerpt does not contain the evidence presented by petitioner. Instead, it begins with respondent's motion for a directed finding following her presentation of evidence.

¶ 13        The record indicates petitioner presented evidence about the minor's wishes and their relationship with petitioner and respondent. Exhibits in the record include (1) orders of

protection involving petitioner's mother and respondent, (2) text messages between petitioner and respondent showing petitioner's attempts to give gifts to the minors and other correspondence with respondent, (3) information about the incident during which respondent allegedly hit petitioner's sister, and (4) photographs that appear to be of petitioner with the minors. However, because there is no full report of proceedings, it is unknown whether those exhibits were actually admitted into evidence. It is also unknown whether the reports from the GAL that are in the record were considered by the trial court or if the GAL testified. However, the court referred to the GAL's interviews in the portion of the hearing available in the record.

¶ 14 Respondent argued petitioner failed to show his denial of visitation was unreasonable or caused undue harm. Petitioner argued the opposite. In particular, she argued the trial court could draw a reasonable inference respondent's denial of visitation caused emotional harm to the minors by damaging the minor's attachment to petitioner. For example, she argued:

> "The girls are protective of their dad. The Court has heard that as well. You know, the dad has said, you know, oh, yeah, I've displayed my anger in the presence of the children based upon this. What do we expect them to do? That in and of itself shows just a progression of behavior that is designed to—to deny the attachment. That's emotional harm, if not mental harm as well. And—and again, not to go through everything the Court has heard."

¶ 15 The trial court stated it believed it was in the best interest of the minors to continue to have contact with petitioner but observed that was not the legal standard at issue. Instead, the court noted it was required to find an unreasonable denial of visitation causing undue harm to the minors. The court found the denial of visitation was "clearly unreasonable." The court also found petitioner filed her petition in good faith. However, the court found a lack of

evidence of undue harm, stating:

> "Mental and physical health of the siblings, certainly that's good.
>
> The length and quality of the relationship, it's really been on and off. And I believe this is an important factor to consider because there was a—well, there's no evidence to the contrary that [petitioner's] relationship with the children prior to the death of their mother was a close one and that she had regular contact with these children. That relationship was terminated by the father.
>
> However, there's no evidence that that termination caused undue harm in and of itself. That relationship was able to be resumed apparently without hiccup. And again, [the GAL] doesn't indicate to me from her interviews that while the children were happy about the relationship, I don't get the sense that it was really much different than a close friend being brought back into their life."

Thus, the court granted the motion for a directed finding. The court also ordered the parties to split the GAL fees.

¶ 16        On January 12, 2023, respondent filed a motion seeking attorney fees as sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and section 508 of the Marriage Act (750 ILCS 5/508 (West 2022)). Respondent argued petitioner's action was not well-grounded in fact or law. Respondent attached documents pertaining to the parties' financial circumstances and alleged his mother loaned him money to pay his legal fees.

¶ 17        Respondent's monthly income from his business and Social Security survivorship benefits was $3,207 per month. He had equity in a home and reported $425 per month in debt payments, along with a $260 car payment. He listed a debt to Peggy McDonald in the amount of $62,000 for attorney fees, but did not distinguish whether the amount of those fees was all

- 5 -

attributable to the current action. He also did not report making payments on that debt or provide information regarding his obligation to repay it.

¶ 18    Petitioner reported $4,584.58 in monthly income. She had equity in a home, $2,827.80 in bank accounts, and reported $660 per month in debt payments, along with a $274.88 car payment. Petitioner's tax return showed an annual income of $84 from her spouse. Both parties reported receiving tax refunds, with respondent's refunds being larger than petitioner's refunds.

¶ 19    A new judge presided over the hearing on respondent's motion. The trial court noted the previous judge found respondent unreasonably denied visitation, but petitioner failed to prove undue harm to the minors. The court found petitioner had made a good-faith and reasonable argument that harm could be inferred from the denial of visitation. Thus, the court denied sanctions. The court did not decide whether section 508 would permit an award of fees. Instead, it found, even if its fees were authorized under section 508, there was not a sufficient financial disparity between the parties to justify an award. The court noted petitioner made $55,000 per year, but shared expenses with a spouse. In its written order the court stated it considered the evidence presented at the hearing, the pleadings in the file, and the transcripts of previous hearings. The court further noted petitioner was a teacher, "a profession known for its social value but not for its financial benefit to the teacher."

¶ 20    The trial court denied respondent's motion to reconsider. The record shows a hearing was held on the motion but does not include a report of proceedings of that hearing or a substitute for a report of proceedings.

¶ 21    This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23         On appeal, respondent contends the trial court erred when it denied sanctions under Rule 137 or attorney fees under section 508 of the Marriage Act. He argues petitioner was required to prove the denial of visitation caused undue harm and she failed to present any proof to establish harm to the minors.

¶ 24         We first note, in his reply brief, respondent takes issue with petitioner's *pro se* appellate brief, asserting her brief failed to rebut his arguments and was essentially not a brief at all. Thus, applying *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976), he requests this court find he established *prima facie* reversible error. We decline to do so. Contrary to respondent's assertion, petitioner's brief is cogent, well-written, and addresses the issues in the appeal. Accordingly, respondent has not established *prima facie* reversible error.

¶ 25                                    A. Rule 137

¶ 26         Respondent contends Rule 137 sanctions were appropriate because "there was absolutely no evidence on the [element of harm]." He also argues the trial court should not have focused on whether the denial of visitation was unreasonable when he had not yet presented his own evidence.

¶ 27         Rule 137 authorizes a trial court to award attorney fees as sanctions under certain circumstances. This court has held Rule 137 sanctions may be granted when (1) either party files a pleading or motion that, to the best of the attorney's knowledge, information, and belief, is not well-grounded in fact and is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law or (2) the pleading or motion is interposed to harass or to cause unnecessary delay or needless increase in the cost of litigation. *Miller v.*

*Bizzell*, 311 Ill. App. 3d 971, 976, 726 N.E.2d 175, 179 (2000).

¶ 28 Consistent with Rule 137, factors a trial court may consider include (1) the degree of bad faith by the opposing party, (2) whether an award of fees would deter others from acting under similar circumstances, and (3) the relative merits of the parties' positions. *Miller*, 311 Ill. App. 3d at 976. The party requesting the imposition of sanctions under Rule 137 bears the burden of proof. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217, 882 N.E.2d 607, 610 (2007).

¶ 29 Rule 137's purpose is to deter frivolous pleadings or suits with no basis in law, not to penalize an unsuccessful party. *Miller*, 311 Ill. App. 3d at 976. The decision whether to impose sanctions under Rule 137 rests within the trial court's sound discretion, and a reviewing court will not overturn the trial court's decision unless the trial court abused its discretion. *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 579, 739 N.E.2d 1263, 1275 (2000). A trial court abuses it discretion when the court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Buonincontro*, 2022 IL App (2d) 210380, ¶ 41, 215 N.E.3d 274.

¶ 30 Section 602.9(c) of the Marriage Act authorizes siblings of a minor child to petition the trial court for visitation if there is an unreasonable denial of visitation by a parent that causes undue mental, physical, or emotional harm to the child and the child's other parent is deceased. 750 ILCS 5/602.9(c) (West 2020). A sibling may do so by filing a petition in the dissolution proceeding or any other proceeding that involves visitation issues regarding the child. 750 ILCS 5/602.9(b)(1) (West 2020).

¶ 31 Here, respondent focuses on what he characterizes was a "complete lack of any proof" of undue harm to the minors, which he contends is sanctionable under Rule 137.

However, respondent, who was quick to note the perceived deficiencies of petitioner's *pro se* brief, has not provided a report of proceedings on appeal to show the evidence petitioner presented at the hearing. We could spend time commenting on respondent's violations of Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), which requires a statement of facts "which shall contain the facts necessary to an understanding of the case, stated *accurately and fairly without argument or comment*" (emphasis added), but need not.

¶ 32    "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). In the absence of a complete record, especially when the abuse-of-discretion standard applies, we must presume that the trial court acted properly. See *Foutch*, 99 Ill. 2d at 392 (without a transcript of the hearing on the motion, "there is no basis for holding that the trial court abused discretion in denying the motion").

¶ 33    Given the lack of a record of the evidence petitioner actually provided at the hearing, we cannot determine she completely failed in her attempt to prove her case. Meanwhile, as previously noted, Rule 137's purpose is not to penalize an unsuccessful party. *Miller*, 311 Ill. App. 3d at 976. While the trial court factually found there was no evidence of undue harm, the court noted petitioner's attempt at proving the undue harm through evidence of her previously good relationship with the minors and her argument there was an inference the unreasonable termination caused the minors' emotional distress or mental harm. We further note the record contains material supporting the court's conclusion the termination was indeed unreasonable.

- 9 -

Petitioner's argument to the court also included assertions respondent had expressed anger in the presence of the minors, which petitioner argued provided an inference of undue harm. That petitioner was ultimately unable to convince the court to accept her inference does not mean the pleading she filed was not well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law.

¶ 34　　　　Respondent also suggests the trial court focused too much on petitioner's proof the termination of visitation was unreasonable when he had not yet put on evidence, instead of petitioner's failure to prove harm. However, it was permissible for the court to consider the overall relative merits of the parties' positions as shown at the time of respondent's motion. The court properly considered the circumstances of the case and reasonably determined sanctions were not appropriate. Accordingly, we conclude the court did not abuse its discretion in declining to award Rule 137 sanctions.

¶ 35　　　　　　　　　　　　　　B. Section 508

¶ 36　　　　Respondent next argues the trial court erred in declining to award fees under section 508 of the Marriage Act.

¶ 37　　　　Typically, each party has the primary obligation to pay his or her own attorney fees. *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 941, 583 N.E.2d 1192, 1197 (1991). However, section 508(a) of the Marriage Act provides, "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees." 750 ILCS 5/508(a) (West 2022). Such an award may be made in connection with the maintenance or defense of any proceeding under the Marriage Act. 750 ILCS 5/508(a)(1) (West 2022). Petitioner filed her petition seeking visitation under section 602.9 of the Marriage Act (750 ILCS 5/602.9

(West 2020)). Thus, section 508 was applicable to the case.

¶ 38    The Marriage Act requires the trial court to consider "the financial resources of the parties." 750 ILCS 5/508(a) (West 2022). This court has held that the allowance of attorney fees under the Marriage Act must be based upon a finding that one spouse is financially unable to pay the fees while the other is able to do so. *In re Marriage of Drummond*, 156 Ill. App. 3d 672, 684, 509 N.E.2d 707, 716 (1987) (citing *In re Marriage of Weaver*, 133 Ill. App. 3d 825, 830-31, 479 N.E.2d 452, 455 (1985)). The party seeking attorney fees has the burden to establish his or her inability to pay and the other party's ability to pay. *Buonincontro*, 2022 IL App (2d) 210380, ¶ 40. " '[A] trial court's decision to award or deny fees will be reversed only if the trial court abused its discretion.' " *In re Marriage of Haken*, 394 Ill. App. 3d 155, 160, 914 N.E.2d 739, 743 (2009) (quoting *In re Marriage of Schneider*, 214 Ill.2d 152, 174, 824 N.E.2d 177, 190 (2005)).

¶ 39    Here, the trial court did not abuse its discretion in declining to award fees. While respondent asserts his income is only $14,800 per year, we note he also reported receiving $1,970 per month in Social Security survivor benefits, bringing his income closer to that of petitioner than he states in his brief. Both parties reported having debt and modest assets. While respondent noted petitioner had income tax refunds, he too reported refunds that were larger than petitioner's refunds. While respondent was supporting the minors, petitioner reported only $84 in income for her spouse on her tax return, thereby indicating she financially supported her spouse. Thus, the court's determination there was not a sufficient financial disparity between the parties to justify an award was reasonable.

¶ 40    Respondent also argues he cannot afford to repay his mother for his legal fees. However, he did not present evidence of the terms of any agreement for repayment. Respondent

maintains there was no evidence his mother's payment of fees was a gift and argues there was no evidentiary hearing on the matter. However, a hearing was held on his motion, where respondent had the burden of showing his entitlement to fees. Nothing indicates respondent asked for and was denied the ability to provide evidence concerning the debt to his mother. Then, respondent filed a motion to reconsider the denial of fees, and another hearing was held. The trial court denied the motion for the "reasons stated on the record." But respondent has not provided a report of proceedings of that hearing. Given the overall state of the record and the absence of a record of the hearing on the motion to reconsider, we conclude the court did not abuse its discretion in declining to award fees.

¶ 41                                    III. CONCLUSION

¶ 42            For the reasons stated, the judgment of the trial court is affirmed.

¶ 43            Affirmed.