NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241162-U

NO. 4-24-1162

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 5, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| STEPHANIE M. THOMAS, | ) | Appeal from the |
|     Petitioner-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| PAUL M. KINSELLA, | ) | No. 07F9 |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Pablo Eves, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the trial court did not abuse its discretion in ordering respondent to pay 80% of petitioner's attorney fees.

¶ 2    On April 16, 2024, the trial court ordered respondent, Paul M. Kinsella, *pro se*, to pay 80% of petitioner Stephanie M. Thomas's attorney fees, totaling $20,102. Respondent appeals, arguing that the court erred in (1) not requiring petitioner to show an inability to pay her own attorney fees and (2) basing the award of attorney fees on the income disparity of the parties, without considering petitioner's alleged "substantial assets." Petitioner, in turn, asks that we impose sanctions on respondent pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for filing a frivolous appeal for the improper purpose of harassing her.

¶ 3    For the reasons stated below, we affirm the order of the trial court. However, we decline to impose sanctions on respondent.

¶ 4                                I. BACKGROUND

¶ 5        Respondent and petitioner share two children and have never been married. C.K., their first child, was born in 2006. In 2007, petitioner petitioned the trial court to award her "sole care, custody, control and education" of C.K. and to order respondent to pay child support. For the next several years, the parties engaged in a lengthy legal back-and-forth concerning the care of C.K., with each party filing numerous petitions, motions, and responses, including multiple motions for sanctions and petitions to hold the other party in contempt. In 2009, the court awarded sole care of C.K. to petitioner, with respondent entitled to regular weekly visitation. Also in 2009, respondent was ordered to pay child support, as well as $10,000 in attorney fees for petitioner.

¶ 6        Respondent filed a notice of appeal, stating his intent to contest the award of attorney fees. He later filed a motion to dismiss his appeal, stating that he had accepted and complied with all the terms of the trial court's monetary award to petitioner. The appeal was dismissed.

¶ 7        Between 2012 and 2013, both parties sought to modify the established parenting time and child support related to C.K. In March 2013, in relation to these proceedings, the trial court again ordered respondent to pay $3,500 for petitioner's attorney fees.

¶ 8        Respondent filed a notice of appeal on August 13, 2013. He argued, *inter alia*, that the trial court erred in ordering him to pay a portion of petitioner's attorney fees. *In re C.M.K.*, 2014 IL App (4th) 130699-U, ¶ 2. Specifically, he argued that (1) although he had a greater ability to pay, petitioner provided evidence demonstrating she was sufficiently capable of paying her own fees and (2) petitioner " 'precipitated the need for legal fees and lengthy litigation in this case by demanding sole custody.' " *Id.* ¶ 16. With a brief analysis, we concluded, based on the disparate income of the parties (at the time, petitioner earned $42,000 annually and respondent earned

$100,000 annually), the trial court did not abuse its discretion in ordering respondent to pay half of the amount petitioner sought, or 25% of her total fees. *Id.* ¶ 19. Respondent's petition for rehearing was denied on September 5, 2014.

¶ 9        In August 2018, a second child, F.K., was born to the parties. On April 19, 2021, petitioner filed a petition with respect to F.K., asking the trial court to award her the majority of parenting time and order respondent to pay child support. On January 18, 2022, she filed petitions to modify child support and parenting time with respect to C.K. The two children's cases were later consolidated. On September 27, 2022, the court entered an order awarding the majority of parenting time and decision-making responsibilities for both children to petitioner. On June 12, 2023, the court ordered respondent to pay monthly child support to petitioner for the children and divided other costs, such as fees for schooling and extracurricular activities, between the parties.

¶ 10        On March 31, 2023, petitioner filed an amended petition for respondent's contribution to her attorney fees and costs pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Act). See 750 ILCS 5/508 (West 2022). On April 11, 2023, respondent filed a petition for substitution of judge for cause, alleging the "personal dislike and animosity held by the judge for the Respondent" prevented fair proceedings on his behalf. From the record, it is unclear if any action was taken on this petition.

¶ 11        On July 3, 2023, petitioner filed a second amended petition for contribution of attorney fees and costs. She stated that since March 2021, she had incurred $25,127.50 in attorney fees in connection with the children's case and had gone into debt to pay them.

¶ 12        A hearing was held on petitioner's second amended petition on January 11, 2024. At the hearing, petitioner presented exhibits, including (1) respondent's financial affidavit dated October 14, 2021; (2) petitioner's financial affidavits from June 2021 and July 2022; (3) a child

support agreement between the parties from 2023, listing respondent's monthly income as $24,166 and petitioner's monthly income as $4,638; (4) a copy of the attorney/client agreement between petitioner and her counselor; (5) a billing summary for work performed in petitioner's case; and (6) documents showing petitioner used multiple credit cards to pay her legal fees, going into debt. Counsel for petitioner argued that respondent had the means to pay petitioner's attorney fees and petitioner did not. He further noted the difficulty the parties had in resolving the case, attributing multiple delays to respondent, and argued this weighed in favor of awarding attorney fees to petitioner.

¶ 13        Respondent, proceeding *pro se*, argued that the delays in the proceedings caused by his actions—for example, arguing over discovery materials regarding his finances, unsuccessfully attempting to have respondent's mental health records put into evidence four times, and refusing to sign support orders—were warranted. He argued that petitioner had a net worth of "at least half a million dollars" and her decision to pay her attorney fees using credit cards was a choice made to present herself as lacking funds. He proffered that petitioner recently inherited a home from her father when he died and that, when added to the value of her own home, it gave her $270,000 worth of real estate. He further noted that petitioner had two vehicles and retirement income accounts, which he valued at nearly $200,000. He also presented cases which he argued showed that an individual seeking contribution of attorney fees must show an inability to pay the fees on her own.

¶ 14        On examination by petitioner's counsel, respondent acknowledged that he had not provided any recent evidence of his own financial affairs for the trial court to consider. He testified that his prior disclosure of two bank accounts in 2021, which contained $1,634.20 and $3.20 respectively, remained the only accounts he had. However, he stated that he also had investment

accounts and had previously provided petitioner's counsel information regarding those accounts, although they were not disclosed on the financial affidavit that he signed in 2021.

¶ 15 Petitioner testified that she did not own her father's home "free and clear." She stated that her father had her name put on the deed for his home after he went into hospice care. When asked if the transfer of the home was unlawful, she acknowledged that it was "an enormous mess" and that she was currently working with a probate attorney. She testified that the home also had a mortgage on it and that she had another sibling who was also an heir to her father's estate. She further testified that in order to access the equity on her own home, she would need to take out a loan, for which she was denied, and that if she borrowed from her retirement accounts, she would have incurred charges and penalties. She stated that it would be "pretty devastating" for respondent not to contribute to her attorney fees.

¶ 16 The trial court took the matter under advisement and, at a hearing on April 1, 2024, gave its decision. The court stated it had considered the evidence, arguments of the parties, "statutory factors *** including the requirement of showing the parties' respective inability and ability to pay fees," and the parties' "undue litigiousness." The court stated:

> "As it stands I find that Petitioner has some ability, but that ability is limited to pay her attorney's fee in their entirety; whereas, based on the totality of the file, *** the Court finds that [Respondent] has a far greater ability to contribute to the Petitioner's attorney fees. This disparity is clear to the court.
>
> I considered delays and vexatious litigation tactics since the entry of counsel in 2021 ***. The Court finds while there were some hearings that could be considered delay tactics, both sides were engaged in such practices during the year 2022."

The court acknowledged that

> "there was some evidence of new resources available to [petitioner] but not enough to directly tie her with the assets. Rather, much of it seemed to be speculative at this point. It *** might have changed the ruling of the Court had that information been in the final form."

In addition to its findings on the financial resources of the parties, the court further found that petitioner's attorney fees were reasonable. Relying on previous orders that had divided the parties' insurance obligations and daycare expenses along an 80/20 split, the court ordered respondent to pay 80% of petitioner's attorney fees, or $20,102. In a written order, the court reiterated its finding that petitioner had "limited resources and [was] unable to pay all of her attorney fees."

¶ 17　　　　　Respondent filed motions for reconsideration on May 2, May 16, and June 18, 2024, alleging that newly discovered evidence regarding petitioner's assets warranted a rehearing. A hearing was held before a new judge. No transcript from this hearing was included in the record on appeal. However, an order entered on September 4, 2024, shows that the trial court denied respondent's motion, finding the evidence he alleged was newly discovered was known at the time of the original hearing and the prior judge had not abused his discretion in awarding attorney fees to petitioner.

¶ 18　　　　　This appeal followed.

¶ 19　　　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　　Respondent presents two arguments on appeal. He argues the trial court erred in (1) "not applying the ability to pay standard established in Illinois case law, which sets the threshold in awarding attorney fees in State of Illinois," and (2) basing the award of attorney fees on the disparate incomes of the parties without taking into account petitioner's "substantial assets,"

which he claims did not "align with the principles outlined in 'Attorney Fees; Client's Rights and Responsibilities.' " Petitioner, in turn, opposes respondent's arguments and asks us to sanction him pursuant to Rule 375(b) for filing a frivolous appeal for the purpose of harassing her and increasing the cost of litigation.

¶ 21                               A. Inability-to-Pay Standard

¶ 22        Section 809 of the Illinois Parentage Act of 2015 (750 ILCS 46/809(a) (West 2024)) allows a trial court to order that "reasonable fees of counsel" be paid by the parties in accordance with section 508 of the Act (750 ILCS 5/508 (West 2024)). Section 508 of the Marriage Act, in turn, provides for an award of reasonable attorney fees "after considering the financial resources of the parties." 750 ILCS 5/508 (West 2024). A trial court's decision to award attorney fees will be reversed only when it is an abuse of discretion. *In re Marriage of Haken*, 394 Ill. App. 3d 155, 160 (2009). "A trial court abuses its discretion when it acts arbitrarily, without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law, resulting in substantial injustice." *Id.*

¶ 23        Respondent argues the trial court erred in awarding attorney fees to petitioner where petitioner's "substantial assets," such as her investment funds, home equity, and vehicles, showed she had the ability to pay her own fees. In support of his argument, he cites *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005), in which our supreme court stated that section 508 of the Act requires a party seeking an award of attorney fees to establish an inability to pay. In response, petitioner cites our holding in *Haken* and argues, as we concluded in *Haken*, that the court in *Schneider* incorrectly relied on inapplicable past precedent in making its statement.

¶ 24        Petitioner is correct that, in the past, we have been critical of *Schneider*'s statement that a party seeking an award of attorney fees must show an inability to pay. *Haken*, 394 Ill. App.

- 7 -

3d at 162. In *Haken*, we noted that section 508(a) (750 ILCS 5/508(a) (West 2006)), as it was amended prior to *Schneider*, directed a court to consider the factors listed in section 503(j) of the Act (*id.* § 503(j)) in deciding whether to award attorney fees. *Haken*, 394 Ill. App. 3d at 162. The amended version of the statute did not include a requirement that the party seeking an award of attorney fees must show an inability to pay, and we found that shifting the analysis to a party's inability to pay ran contrary to the directive of the statute that a court should consider section 503(j)'s factors in making its determination. *Id.* at 161-62 (arguing that to read an inability-to-pay standard into section 508(a) would "eviscerate[ ] the statutory directive in section 503(j)(2) to consider the criteria for the division of marital property under section 503(d) in making contribution awards"). We therefore concluded that *Schneider* was one of many cases in which a court had "repeated language from older cases" based on a version of section 508(a) that was no longer applicable. *Id.* at 162. We concluded that under section 508(a), a court must consider the relative financial resources of the parties but need not find the party seeking contribution has an inability to pay. *Id.*

¶ 25 Our analysis in *Haken* was met with agreement from some appellate districts (*In re Marriage of Anderson*, 2015 IL App (3d) 140257, ¶ 20) and disagreement from others (*Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 103). In 2017, the supreme court addressed the district split. In *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19, the court concluded that, contrary to our determination in *Haken*, the inability-to-pay standard was not in conflict with the amended version of section 508(a). Instead, the standard complemented the amended statute's directive to consider both the financial resources of the parties and the factors in section 503(j), which largely concern the relative financial standings of the parties. *Id.* Tying the inability-to-pay standard in with the amended version of section 508(a), the court concluded that the section 503(j) factors should be

used as a guide in determining whether a party would undermine her financial stability if required to pay her attorney fees in whole. *Id.* We follow *Heroy*'s precedent and thus conclude that a party seeking an award of attorney fees under section 508(a) of the Act must show an inability to pay her own fees.

¶ 26 Because respondent's argument that petitioner had sufficient resources to pay her own attorney fees overlaps with his argument that the trial court abused its discretion in awarding her attorney fees, we will discuss both below.

¶ 27 B. Trial Court's Award of Attorney Fees

¶ 28 Respondent argues the trial court erred in awarding attorney fees based on the income disparity of the parties without considering petitioner's "substantial assets" and that this "does not align with the principles outlined in 'Attorney Fees; Client's Rights and Responsibilities' " Respondent argues petitioner has substantial assets in the form of retirement and investment accounts, home equity, and automobiles, showing she has "the ability to pay her attorney fees without financial hardship." He argues, "There is no scenario where [petitioner's] own positive net worth of at least $292,000 does not afford her the ability to pay her own attorney fees."

¶ 29 As stated, a party seeking attorney fees must demonstrate that she is unable to pay her own fees and the other party is able to do so. *Id.* ¶ 30. A trial court's decision to award attorney fees will not be reversed absent an abuse of discretion. *Id.* ¶ 13. We note that while section 508(a) directs courts to consider the section 503(j) factors "at the conclusion of any pre-judgment dissolution proceeding under this subsection," this command is not applicable to the instant case, which does not concern a dissolution of marriage. See 750 ILCS 5/508(a) (West 2024). We will therefore limit our analysis to consideration of the financial resources of the parties and each

party's ability to pay petitioner's attorney fees. See *Heroy*, 2017 IL 120205, ¶ 19.

¶ 30 We find that the trial court did not abuse its discretion in ordering respondent to pay 80% of petitioner's attorney fees. The court found that petitioner lacked the ability to pay her own attorney fees and that respondent had far greater financial means to do so. This conclusion was supported by the evidence. Although petitioner had certain resources and income available to her, she also testified that she was denied a loan by her bank, she had amassed significant credit card debt to pay her attorney fees, her father's home was likely transferred to her unlawfully and came with its own mortgage, and she could not take money from her retirement or investment funds without paying penalties. A party seeking attorney fees does not need to show that she has absolutely no resources available to her; she only needs to show that paying the attorney fees in their entirety would undermine her financial stability. *Id.* From the evidence presented at the hearing, we find the court could have reasonably concluded that petitioner lacked the ability to pay her own attorney fees and that respondent had the ability to do so. We therefore find the court did not abuse its discretion in ordering respondent to pay 80% of petitioner's attorney fees.

¶ 31 C. Respondent's Reply Brief

¶ 32 In his reply brief, respondent argues, for the first time, that the trial court "demonstrated clear bias through the entire court process by making 100% of decisions to one party," which he claims was "unfathomable and unrealistic" without "severe personal bias of judge." He states that the judge who ordered him to pay attorney fees "was recused after some review by his superiors at the trial court" and encourages us to "investigate the reason for his recusal shortly after his decision on attorney fees and how those are connected."

¶ 33 Because respondent raises this argument for the first time in his reply brief, we will not address this issue. See Ill. S. Ct. R. 341(j) (eff. Oct. 1, 2020)) (stating the reply brief shall be

confined to replying to arguments made in the appellee's brief).

¶ 34                                    D. Sanctions

¶ 35          Petitioner argues sanctions should be imposed on respondent for allegedly filing a frivolous appeal for the improper purpose of harassing her. Specifically, petitioner notes that respondent previously appealed an award of attorney fees on the same factual and legal grounds in 2013 and was unsuccessful. See *C.M.K.*, 2014 IL App (4th) 130699-U. She argues that in the prior case, respondent's inability-to-pay argument was rejected, and the trial court's award of attorney fees, which was based on an income disparity less than what it is between the parties currently, was determined not to be an abuse of discretion. She argues that because we previously affirmed an award of attorney fees where the income disparity was less, it is "inconceivable" that we would find an abuse of discretion in the instant case, and, therefore, respondent's motives for appealing the award must be improper.

¶ 36          Respondent replies that the discretion a judge has when entering an award of attorney fees means it is essentially just an "opinion" and one individual judge's opinion "over a decade ago when circumstances were vastly different including a different case, another child, different incomes and assets by both parties" has no bearing on the instant case. He further notes that in the past case, he was ordered to make a 25% contribution to petitioner's total attorney fees, whereas in the instant case, the contribution was significantly larger, at 80% of her attorney fees.

¶ 37          Rule 375(b) provides

              "If, after consideration of an appeal or other action pursued in a reviewing

              court, it is determined that the appeal or other action itself is frivolous, or that an

              appeal or other action was not taken in good faith, for an improper purpose, such

              as to harass or to cause unnecessary delay or needless increase in the cost of

litigation \*\*\* an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff Feb. 1, 1994).

We determine whether an appeal is frivolous by an objective standard. *Thompson v. Buncik*, 2011 IL App (2d) 100589, ¶ 21. "[T]he appeal is considered frivolous if it would not have been brought in good faith by a 'reasonable, prudent attorney.' " *Id.* (quoting *Dreisilker Electric Motors Inc., v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312-13 (1990)). We may also elect to impose sanctions on *pro se* litigants under Rule 375(b). See *Williams v. Commissary Department of Illinois Department of Corrections*, 407 Ill. App. 3d 1135, 1138 (2011).

¶ 38       We note that petitioner did not file a separate motion for sanctions pursuant to Rule 375 and instead merely requested the imposition of sanctions in her brief on appeal. However, we may impose sanctions either on the motion of a party or on our own initiative if we deem it appropriate. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). We decline to do so in this case.

¶ 39       As stated, in 2013, respondent appealed a separate order of the trial court to pay petitioner's attorney fees, arguing that petitioner must show an inability to pay her own fees before being awarded attorney fees. *C.M.K.*, 2014 IL App (4th) 130699-U, ¶ 18. In our decision, we acknowledged respondent's argument but did not address it explicitly. We simply concluded, "Based on the record before us, given the disparate incomes of the parties, we find the court did

not abuse its discretion in ordering respondent to pay half of petitioner's attorney fees." *Id.* ¶ 19. We find our discussion in *C.M.K.* was brief enough to leave some doubt as to whether the inability-to-pay standard applied.

¶ 40 More to the point, respondent's first appeal was brought in 2013. This was before *Heroy* was decided in 2017. At the time of respondent's first appeal, his argument regarding petitioner's inability to pay was contradicted by our precedent in *Haken*. At present, as we have discussed herein, *Heroy* has confirmed that the inability-to-pay standard still applies to the amended version of section 508(a). Despite petitioner's claims, respondent's argument that a court must apply an inability-to-pay standard when awarding attorney fees under section 508(a) is grounded in the law.

¶ 41 Finally, we find that respondent's argument that the trial court abused its discretion in awarding attorney fees to petitioner was not frivolous. Although, as petitioner argues, we previously affirmed an award of attorney fees where the income disparity of the parties was less than it is now (see *C.M.K.*, 2014 IL App (4th) 130699-U, ¶ 19), the award in that case was for 25% of petitioner's total attorney fees. In contrast, in the instant case, respondent was ordered to pay 80% of petitioner's attorney fees. While perhaps not a strong argument, considering the income disparity also grew between the two cases, we find respondent could have argued in good faith that this 55% higher award was an abuse of discretion. As a result, we decline to sanction respondent pursuant to Rule 375.

¶ 42                                 III. CONCLUSION

¶ 43 For the reasons stated, we affirm the trial court's judgment.

¶ 44 Affirmed.